FILED
2019 Apr-11 AM 10:55
U.S. DISTRICT COURT
N.D. OF ALABAMA

# UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ALABAMA
# SOUTHERN DIVISION

| | | |
|---|---|---|
| JAMES BRUCE CARROLL, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No.: 2:17-cv-02022-SGC |
| | ) | |
| SOCIAL SECURITY | ) | |
| ADMINISTRATION, Commissioner, | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION[1]

The plaintiff, James Bruce Carroll, appeals from the decision of the Commissioner of the Social Security Administration (the "Commissioner") denying his application for Disability Insurance Benefits ("DIB"). Carroll timely pursued and exhausted his administrative remedies, and the Commissioner's decision is ripe for review pursuant to 42 U.S.C. § 405(g). For the reasons discussed below, the Commissioner's decision is due to be affirmed.

## I. Procedural History

Carroll completed the tenth grade and has previously worked as a forklift operator. (Tr. at 175, 195, 219). In his application for DIB, Carroll claimed he became disabled on March 28, 2013, due to high blood pressure, gout, thrombosis,

---

[1] The parties have consented to the exercise of full dispositive jurisdiction by a magistrate judge pursuant to 28 U.S.C. § 636(c). (Doc. 13).

1

an irregular heartbeat, arthritis, lower back pain, high cholesterol, anxiety, panic disorder, shortness of breath, and the inability to stand or bend for any length of time. (*Id.* at 175, 194). After his claim was denied, Carroll requested a hearing before an administrative law judge ("ALJ"). (*Id.* at 84). Following two hearings, the ALJ denied Carroll's claim. (*Id.* at 15-36).[2] Carroll was 58 years old when the ALJ issued his decision. (*Id.* at 36, 175). After the Appeals Council denied review of the ALJ's decision (*id.* at 1-3), that decision became the final decision of the Commissioner, *see Frye v. Massanari*, 209 F. Supp. 2d 1246, 1251 (N.D. Ala. 2001) (citing *Falge v. Apfel*, 150 F.3d 1320, 1322 (11th Cir. 1998)). Thereafter, Carroll commenced this action. (Doc. 1).

## II. Statutory and Regulatory Framework

To establish eligibility for disability benefits, a claimant must show "the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. §§ 416(i)(1)(A), 423(d)(1)(A); *see also* 20 C.F.R. § 404.1505(a). Furthermore, a claimant must show that he was disabled between his alleged initial onset date and his date last insured. *Mason v. Comm'r*

---

[2] After a hearing on July 6, 2014, the ALJ concluded an updated consultative examination of Carroll was required to determine his claim. (*Id.* at 353). A second hearing was held on February 8, 2017, following that consultative examination. (*Id.* at 43).

2

of Soc. Sec., 430 F. App'x 830, 831 (11th Cir. 2011) (citing *Moore v. Barnhart*, 405 F.3d 1209, 1211 (11th Cir. 2005); *Demandre v. Califano*, 591 F.2d 1088, 1090 (5th Cir. 1979)). The Social Security Administration employs a five-step sequential analysis to determine an individual's eligibility for disability benefits. 20 C.F.R. § 404.1520(a)(4).

First, the Commissioner must determine whether the claimant is engaged in "substantial gainful activity." *Id.* at § 404.1520(a)(4)(i). "Under the first step, the claimant has the burden to show that she is not currently engaged in substantial gainful activity." *Reynolds-Buckley v. Comm'r of Soc. Sec.*, 457 F. App'x 862, 863 (11th Cir. 2012). If the claimant is engaged in substantial gainful activity, the Commissioner will determine the claimant is not disabled. 20 C.F.R. § 404.1520(a)(4)(i) and (b). At the first step, the ALJ determined Carroll last met the insured status requirements of the Social Security Act on September 30, 2016, and has not engaged in substantial gainful activity since his alleged onset date of March 28, 2013. (Tr. at 17-18).

If the claimant is not engaged in substantial gainful activity, the Commissioner must next determine whether the claimant suffers from a severe physical or mental impairment or combination of impairments that has lasted or is expected to last for a continuous period of at least twelve months. 20 C.F.R. § 404.1520(a)(4)(ii). An impairment "must result from anatomical, physiological, or

psychological abnormalities which can be shown by medically acceptable clinical and laboratory diagnostic techniques." *Id.* at § 404.1508. Furthermore, it "must be established by medical evidence consisting of signs, symptoms, and laboratory findings, not only by [the claimant's] statement of symptoms." *Id.*; *see also* 42 U.S.C. § 423(d)(3). An impairment is severe if it "significantly limits [the claimant's] physical or mental ability to do basic work activities . . . ." 20 C.F.R. § 404.1520(c).[3] "[A]n impairment can be considered as not severe only if it is a slight abnormality which has such a minimal effect on the individual that it would not be expected to interfere with the individual's ability to work, irrespective of age, education, or work experience." *Brady v. Heckler*, 724 F.2d 914, 920 (11th Cir. 1984); *see also* 20 C.F.R. § 404.1521(a). A claimant may be found disabled based on a combination of impairments, even though none of his individual impairments alone is disabling. 20 C.F.R. § 404.1523. The claimant bears the burden of providing medical evidence demonstrating an impairment and its severity. *Id.* at § 404.1512(a) and (c). If the claimant does not have a severe

---

[3] Basic work activities include:

> (1) [p]hysical functions such as walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling; (2) [c]apacities for seeking, hearing, and speaking; (3) [u]nderstanding, carrying out, and remembering simple instructions; (4) [u]se of judgment; (5) [r]esponding appropriately to supervision, co-workers and usual work situations; and (6) [d]ealing with changes in a routine work setting.

20 C.F.R. § 404.1521(b).

4

impairment or combination of impairments, the Commissioner will determine the claimant is not disabled. *Id.* at § 404.1520(a)(4)(ii) and (c).

At the second step, the ALJ determined Carroll has the following severe impairments: osteoarthritis, gout, essential hypertension, neuropathy, mixed hyperlipidemia, obesity, anxiety, major depressive disorder, and alcohol dependence. (Tr. at 18).

If the claimant has a severe impairment or combination of impairments, the Commissioner must then determine whether the impairment meets or equals one of the "Listings" found in 20 C.F.R. Part 404, Subpart P, Appendix 1. 20 C.F.R. § 404.1520(a)(4)(iii); *see also id.* at § 404.1525-26. The claimant bears the burden of proving his impairment meets or equals one of the Listings. *Reynolds-Buckley*, 457 Fed. App'x at 863. If the claimant's impairment meets or equals one of the Listings, the Commissioner will determine the claimant is disabled. 20 C.F.R § 404.1520(a)(4)(iii) and (d). At the third step, the ALJ determined Carroll does not have an impairment or combination of impairments that meets or medically equals the severity of one of the Listings. (Tr. at 18-23).

If the claimant's impairment does not meet or equal one of the Listings, the Commissioner must determine the claimant's residual functional capacity ("RFC") before proceeding to the fourth step. 20 C.F.R. § 404.1520(e); *see also id.* at § 404.1545. A claimant's RFC is the most he can do despite his impairment. *See id.*

5

at § 404.1545(a)(1). At the fourth step, the Commissioner will compare his assessment of the claimant's RFC with the physical and mental demands of the claimant's past relevant work. *Id.* at §§ 404.1520(a)(4)(iv) and (e), 404.1560(b). "Past relevant work is work that [the claimant] [has] done within the past 15 years, that was substantial gainful activity, and that lasted long enough for [the claimant] to learn to do it." *Id.* at § 404.1560(b)(1). The claimant bears the burden of proving his impairment prevents him from performing his past relevant work. *Reynolds-Buckley*, 457 F. App'x at 863. If the claimant is capable of performing his past relevant work, the Commissioner will determine the claimant is not disabled. 20 C.F.R. §§ 404.1520(a)(4)(iv), 404.1560(b)(3).

Before proceeding to the fourth step, the ALJ determined Carroll has the RFC to perform medium work[4] with occasional stooping and crouching; no climbing; no pushing and/or pulling of the bilateral lower extremities; the performance of simple, non-complex tasks; and occasional contact with co-workers or supervisors. (Tr. at 23-34). At the fourth step, the ALJ determined Carroll is not capable of performing any of his past relevant work. (*Id.* at 34).

If the claimant is unable to perform his past relevant work, the Commissioner must finally determine whether the claimant is capable of performing other work that exists in substantial numbers in the national economy

---

[4] Medium work is defined as that which "involves lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds." 20 C.F.R. § 404.1567(c).

6

in light of the claimant's RFC, age, education, and work experience. 20 C.F.R. §§ 404.1520(a)(4)(v) and (g)(1), 404.1560(c)(1). If the claimant is capable of performing other work, the Commissioner will determine the claimant is not disabled. *Id.* at § 404.1520(a)(4)(v) and (g)(1). If the claimant is not capable of performing other work, the Commissioner will determine the claimant is disabled. *Id.*

At the fifth step, considering Carroll's age, education, work experience, and RFC, the ALJ determined there are jobs that exist in significant numbers in the national economy that Carroll can perform, such as those of hand packager, laundry laborer, and hardware assembler. (Tr. at 34-35). Therefore, the ALJ concluded Carroll is not disabled. (*Id.* at 35-36).

### III. Standard of Review

Review of the Commissioner's decision is limited to a determination whether that decision is supported by substantial evidence and whether the Commissioner applied correct legal standards. *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1158 (11th Cir. 2004). A district court must review the Commissioner's findings of fact with deference and may not reconsider the facts, reevaluate the evidence, or substitute its judgment for that of the Commissioner. *Ingram v. Comm'r of Soc. Sec. Admin.*, 496 F.3d 1253, 1260 (11th Cir. 2007); *Dyer v. Barnhart*, 395 F.3d 1206, 1210 (11th Cir. 2005). Rather, a district court

7

must "scrutinize the record as a whole to determine whether the decision reached is reasonable and supported by substantial evidence." *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983) (internal citations omitted). Substantial evidence is "such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Id.* It is "more than a scintilla, but less than a preponderance." *Id.* A district court must uphold factual findings supported by substantial evidence, even if the preponderance of the evidence is against those findings. *Miles v. Chater*, 84 F.3d 1397, 1400 (11th Cir. 1996) (citing *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990)).

A district court reviews the Commissioner's legal conclusions *de novo*. *Davis v. Shalala*, 985 F.2d 528, 531 (11th Cir. 1993). "The [Commissioner's] failure to apply the correct law or to provide the reviewing court with sufficient reasoning for determining that the proper legal analysis has been conducted mandates reversal." *Cornelius v. Sullivan*, 936 F.2d 1143, 1145-46 (11th Cir. 1991).

## IV. Discussion

On appeal, Carroll argues the ALJ (1) failed to accord proper weight to the opinions of Dr. Samuel E. Fleming, III, a clinical neuropsychologist who performed a consultative examination of Carroll in October 2014, and (2)

8

improperly discredited his testimony regarding his pain and other subjective symptoms.

### A. Weight Accorded Dr. Fleming's Opinion

"The ALJ must state with particularity the weight given to different medical opinions and the reasons for doing so." *Forrester v. Comm'r of Soc. Sec.*, 455 F. App'x 899, 902 (11th Cir. 2012) (citing *Sharfarz v. Bowen*, 825 F.2d 278, 279 (11th Cir. 1987)). "The ALJ may consider many factors when weighing medical evidence, including the claimant's relationship with the examining or treating physician, whether a medical opinion is well-supported, whether a medical opinion is consistent with the claimant's records, and a doctor's specialization." *Wilcox v. Comm'r, Soc. Sec. Admin.*, 442 F. App'x 438, 439 (11th Cir. 2011) (citing 20 C.F.R. § 404.1527).

Following a mental examination of Carroll, Dr. Fleming offered the opinions (1) Carroll would have difficulty understanding, carrying out, and remembering instructions; (2) Carroll's interactions with supervisors and coworkers, as well as his ability to cope with work pressures in a work setting, would likely be poor; and (3) Carroll does not seem capable of managing financial benefits or functioning independently. (Tr. at 304). Dr. Fleming also assigned Carroll a Global Assessment of Functioning ("GAF") score of 50. (*Id.*).

The ALJ stated he gave little weight to Dr. Fleming's opinions because (1) there is no evidence Carroll has significant deficits with respect to memory, attention, persistence, or pace and (2) the opinions are contradicted by Carroll's own statements. (*Id.* at 32-33). The ALJ stated he gave minimal weight to the GAF score Dr. Fleming assigned to Carroll in light of Carroll's medical history and activities of daily living. (*Id.* at 33). These were appropriate grounds on which to discredit Dr. Fleming's opinions. *See Phillips v. Barnhart*, 357 F.3d 1232, 1241 (11th Cir. 2004) (holding ALJ did not err in rejecting treating physician's opinion where it was contradicted by physician's own treatment notes and claimant's reported daily activities).

Moreover, the stated grounds are supported by substantial evidence. The record does lack evidence Carroll has cognitive deficits so severe they would prevent him from working. Moreover, Dr. Fleming's own testing revealed Carroll's concentration and attention are adequate and that while his remote memory is deficient, his immediate recall and recent memory are at least marginally adequate. (*Id.* at 303). Dr. Fleming also found Carroll was compliant with the mental examination and put forth an adequate effort. (*Id.* at 304).

Finally, in a function report completed in September 2014, Carroll himself indicated he has no problem with personal care (e.g., bathing, dressing, feeding himself); is able to take care of his personal needs without reminders; and is able to

pay bills, count change, handle a savings account, and use a checkbook. (*Id.* at 209-11). He further indicated he is able to pay attention for between one-and-a-half and two hours and finish what he starts (e.g., a conversation, chores, a movie). (*Id.* at 213). When asked how well he follows written instructions, he responded "all the time." (*Id.*). When asked how well he follows spoken instructions, he responded "OK at most time when I can remember what was said." (*Id.*). When asked how well he gets along with authority figures, he responded "very good." (*Id.* at 214). When asked how well he handles changes in routine," he responded "fair." (*Id.*). Virgie L. Argo, Carroll's common-law wife with whom he lives, gave substantially the same responses in a third-party function report she also completed in September 2014. (*Id.* at 200-07).

In challenging the weight assigned to Dr. Fleming's opinions, Carroll notes he and Argo completed the function reports more than three years ago. (Doc. 9 at 6). However, as the Commissioner notes, this is a misleading factual representation. While Carroll and Argo may have completed the function reports more than three years earlier than the date of Carroll's brief on appeal from the Commissioner's decision, they completed the function reports only one month before Dr. Fleming examined Carroll and authored the report containing his medical opinions. (Tr. at 207, 215, 301). Accordingly, there is no basis for an argument the time elapsed between completion of the function reports and

11

formation of Dr. Fleming's opinions renders the former an inappropriate basis on which to discredit the latter.

Carroll also claims the ALJ selectively cited from the function reports, noting he and Argo both indicated Argo has to remind him to take his medication and his ability to handle work pressure is only fair. (Doc. 9 at 6).[5] Even if the function reports contain evidence that would support Carroll's claim of a disabling mental impairment, they also contain substantial evidence supporting the ALJ's reason for discrediting Dr. Fleming's opinions. *See Moore*, 405 F.3d at 1213 (explaining that to the extent claimant identified evidence that undermined ALJ's factual determination, claimant misinterpreted "narrowly circumscribed" nature of appellate review, which precludes reviewing court from re-weighing evidence or substituting its judgment for that of Commissioner, even if evidence preponderates against Commissioner's decision).

Finally, Carroll states the ALJ did not note Dr. Fleming's opinions were based on testing he performed on Carroll. (Doc. 9 at 6). There are a number of factors relevant to assigning weight to a medical opinion. *See* 20 C.F.R. § 404.1527(c) (identifying, without limitation, five specific factors considered in assigning weight to a medical opinion). Whether the source of a medical opinion

---

[5] More accurately, when asked how well he handles stress, Carroll responded "not good," and when asked how well he handles changes in routine, Carroll responded "fair." (Tr. at 214). Similarly, when asked how well Carroll handles stress, Argo responded "not very well," and when asked how well Carroll handles changes in routine, Argo responded "good." (*Id*. at 206).

has examined a claimant is one of those factors. *Id.* at § 404.1527(c)(1). However, an ALJ is not required to explicitly address each of the factors identified in § 404.1527(c). *Lawton v. Comm'r of Soc. Sec.*, 431 F. App'x 830, 833 (11th Cir. 2011). The ALJ did state he considered the opinion evidence in accordance with § 404.1527 and the relevant Social Security Rulings. (Tr. at 23). He also noted the results of the testing Dr. Fleming performed on Carroll. (*Id.* at 27). These statements indicate the ALJ considered Dr. Fleming's status as an examining source in assigning weight to his opinions. Moreover, while a source's examining relationship with a claimant generally results in more weight being given to that source's opinions, the consistency of the source's opinions with the record as a whole is also relevant to the assignment of weight. *See* § 404.1527(c)(1) and (4). Because Dr. Fleming's opinions were inconsistent with Carroll's own statements regarding his functional limitations, the ALJ properly discredited them, notwithstanding Dr. Fleming's status as an examining source. *Cf. Jarrett v. Comm'r of Soc. Sec.*, 422 F. App'x 869, 873-74 (11th Cir. 2011) (holding ALJ did not err in assigning greater weight to opinions of non-examining state agency medical consultants than to treating physician where, *inter alia*, the latter was inconsistent with claimant's treatment records and reported daily activities); *Shaul v. Comm'r of Soc. Sec.*, 2014 WL 116599, at *12 (M.D. Fla. Jan. 13, 2014) (holding ALJ did not err in assigning greater weight to opinion of state medical

examiner than to opinion of treating physician where the former was more consistent with the record).

In sum, because the ALJ stated with particularity the weight given to Dr. Fleming's opinions and the reasons for doing so, and because those reasons were appropriate grounds on which to discredit Dr. Fleming's opinions, supported by substantial evidence, the ALJ did not commit error.

**B. Testimony Regarding Subjective Symptoms**

When a claimant attempts to establish disability through his own testimony of pain or other subjective symptoms, he must show " 'evidence of an underlying medical condition' and either 'objective medical evidence that confirms the severity of the alleged pain [or other subjective symptoms] arising from that condition' or 'that the objectively determined medical condition is of such a severity that it can be reasonably expected to give rise to the alleged pain [or other subjective symptoms].'" *Taylor v. Acting Comm'r of Soc. Sec. Admin.*, 2019 WL 581548, at *2 (11th Cir. 2019) (quoting *Dyer*, 395 F.3d at 1210); *see also* 20 C.F.R. § 404.1529; SSR 16-3p. An ALJ may discredit a claimant's testimony regarding his pain provided she " 'clearly articulate[s] explicit and adequate reasons' for doing so." *Taylor*, 2019 WL 581548, at *2 (quoting *Dyer*, 395 F.3d at 1210). When evaluating a claimant's subjective symptoms, an ALJ considers factors such as the claimant's daily activities, the effectiveness of medication taken

14

to alleviate the symptoms, and treatment other than medication received for relief of the symptoms. 20 C.F.R. § 404.1529(c)(3); SSR 16-3p.

Here, the ALJ determined Carroll's testimony of disabling pain and functional limitations was not consistent with the record, including objective medical evidence. (Tr. at 32). Substantial evidence supports this determination.

The records from Carroll's treating physician, Dr. David Bryant, for the relevant period document Carroll's complaints of back and foot pain and leg and foot numbness, as well as diagnoses of obesity, hypertension, mixed hyperlipidemia, gout, osteoarthritis, and neuropathy of the feet and legs, for which Dr. Bryant prescribed medication. (*Id.* at 271-74, 310-12). However, Dr. Bryant's records lack documentation of observable signs of disabling levels of pain or other subjective physical symptoms. Moreover, while Dr. Bryant prescribed Alprazolam (Xanax) for Carroll's "nerves" (*id.* at 312), his records similarly lack documentation of a disabling mental impairment.

The clinical findings and opinions of two consulting physicians provide further support for the ALJ's decision to discredit Carroll's testimony regarding his degree of physical impairment.

In October 2014, Dr. Zakir Khan perfomed a consultative medical examination of Carroll. (*Id.* at 297). Dr. Khan's examination revealed Carroll's

15

blood pressure was 119/66 mmHg. (*Id.* at 298).[6] Dr. Khan documented essentially normal chest, lung, cardiovascular, back, and musculoskeletal findings. (*Id.*). Specifically, Dr. Khan noted Carroll's breathing was even and unlabored and the rate and rhythm of his heartbeat was regular. (*Id.*). Dr. Khan further noted Carroll experienced no tenderness to palpitation over his spine, had normal range of motion in his lumbar spine, and had negative straight-leg raising tests bilaterally. (*Id.*). Finally, Dr. Khan noted Carroll had normal range of motion at all joints tested in the upper and lower extremities, no swelling or joint deformities, and was able to squat without difficulty. (*Id.*). The ALJ gave Dr. Khan's clinical findings great weight because they were consistent with the record as a whole. (*Id.* at 32).

In August 2016, Dr. Christopher Gerard Baalmann performed a consultative medical examination of Carroll. (*Id.* at 327). Dr. Baalmann documented an elevated blood pressure reading of 140/88 mm/Hg but, like Dr. Khan, reported essentially normal lung and cardiovascular findings. (*Id.* at 329-30). Specifically, Dr. Baalmann noted Carroll's lungs were clear, he did not appear to have shortness of breath at rest, and the rhythm of heartbeat was regular. (*Id.*).

Dr. Baalmann did observe Carroll had difficulty getting up and out of a chair and on and off the exam table. (*Id.* at 329). He further observed Carroll ambulated

---

[6] A normal blood pressure reading is generally defined as less than 120/80 mm/Hg. *See* https://www.heart.org/en/health-topics/high-blood-pressure/understanding-blood-pressure-readings, *last accessed* Apr. 10, 2019.

16

with difficulty: while the speed of his gait was normal, he had a mild limp at the left ankle joint. (*Id.*). Dr. Baalman's examination revealed no spasm of the paraspinous muscles, negative sitting and supine straight-leg raising tests bilaterally, and that while Carroll could not walk on his toes or heels and had difficulty tandem heel walking, he could squat to the floor and recover and bend over and touch his toes. (*Id.* at 330). The strength of Carroll's left ankle was 4+/5 in all directions, with decreased range of motion to 10 degrees in all directions. (*Id.* at 331). The strength of Carroll's upper extremities and lower right extremity was 5/5 in all directions, with normal ranges of motions. (*Id.*). Carroll did not have any muscular atrophy, radiculopathy in his back, or foot swelling. (*Id.*).

Based on his clinical findings, Dr. Baalmann offered the opinion Carroll's ability to walk is only mildly limited. (*Id.* at 313). Dr. Baalmann further opined that during an eight-hour work day, Carroll could walk on a frequent basis (i.e., for between one- and two-thirds of the day); stand for a total of six hours without interruption; sit for a total of eight hours without interruption; frequently climb stairs, ramps, ladders, and scaffolds; frequently balance, stoop, kneel, crouch, and crawl; lift up to one hundred pounds on a continuous basis (i.e., for more than two-thirds of the day); continuously carry up to twenty pounds; frequently carry between twenty-one and one hundred pounds; continuously operate a foot control with his right foot; and operate a foot control with his left foot on an occasional

17

basis (i.e., for up to one-third of the day). (*Id.* at 321-23, 331). The ALJ gave great weight to Dr. Baalmann's opinions because they were consistent with his own clinical findings and the record as a whole. (*Id.* at 33).

The opinions of Dr. Angela Register, a state agency medical consultant, provide further support for the ALJ's decision to discredit Carroll's testimony regarding his degree of mental impairment. In November 2014, Dr. Register reviewed the record as it existed at that time and offered the opinions Carroll has only moderate limitations in the area of mental functioning; that while Carroll would have difficulty sustaining concentration to recall and carry out detailed tasks on a consistent basis, he could understand, recall, and carry out simple, routine tasks over a normal workday; and he could maintain adequate social interactions with the general public, coworkers, and supervisors. (*Id.* at 62-70). The ALJ gave these opinions great weight because they were consistent with the record as a whole. (*Id.* at 33). Additionally, the ALJ noted there is no evidence Carroll sought mental health treatment other than medication for his anxiety or depression. (*Id.* at 31).

Finally, the function reports completed by Carroll and Argo, discussed above, support the ALJ's decision to discredit Carroll's testimony regarding his degree of impairment.

Carroll points to other evidence that he claims supports his subjective symptoms testimony. (Doc. 9 at 8-10). However, as stated, the relevant question is not whether evidence supports Carroll's argument, but whether substantial evidence supports the ALJ's determination. *See Moore*, 405 F.3d at 1213 (discusing "narrowly circumscribed" nature of appellate review). Moreover, the evidence to which Carroll points includes the opinions of Dr. Fleming, which as discussed above, the ALJ properly discredited.

In sum, because the ALJ clearly articulated explicit and adequate reasons for discrediting Carroll's testimony regarding his pain and other subjective symptoms and that determination is supported by substantial evidence, the ALJ did not commit error. *See Wilson v. Barnhart*, 284 F.3d 1219, 1266 (11th Cir. 2002) (holding ALJ properly discredited claimant's testimony regarding his degree of impairment where that testimony was not consistent with objective medical evidence, daily activities, limited use of pain medication, and effectiveness of treatment); *Duval v. Comm'r of Soc. Sec.*, 628 F. App'x 703, 711-12 (11th Cir. 2015) (holding ALJ properly discredited claimant's testimony regarding his degree of impairment where that testimony was not consistent with objective medical

evidence); *Hernandez v. Comm'r of Soc. Sec.*, 523 F. App'x 655, 657 (11th Cir. 2013) (same).[7]

## V. Conclusion

Having reviewed the administrative record and considered all of the arguments presented by the parties, the undersigned find the Commissioner's decision is supported by substantial evidence and in accordance with applicable law. Therefore, that decision is due to be **AFFIRMED**. A separate order will be entered.

**DONE** this 11th day of April, 2019.

*[signature]*
STACI G. CORNELIUS
U.S. MAGISTRATE JUDGE

---

[7] In the context of his second argument, Carroll summarily claims the ALJ should have applied Grid Rule 202.02. (Doc. 9 at 10). The "Grids," also known as the Medical-Vocational Guidelines, are found at 20 C.F.R. Part 404, Subpart P, App. 2. An ALJ may use them to determine at the fifth step whether other work exists in substantial numbers in the national economy that a claimant is capable of performing. *Phillips*, 357 F.3d at 1239.

> The [G]rids provide for adjudicators to consider factors such as age, confinement to sedentary or light work, inability to speak English, educational deficiencies, and lack of job experience. Each of these factors can independently limit the number of jobs realistically available to an individual. Combinations of these factors yield a statutorily-required finding of "Disabled" or "Not Disabled."

*Id.* at 1240. Grid Rule 202.02 directs a finding of disability for a claimant who meets certain age, education, and previous work experience requirements and is limited to light work. 20 C.F.R. Part 404, Subpart P, App. 2, § 202.02. The ALJ determined Carroll has the RFC to perform medium work with certain limitations. (Tr. at 23-34). Carroll makes no direct argument the ALJ's determination of his RFC was in error. Regardless, that determination is supported by substantial evidence, including the evidence discussed above. Therefore, Grid Rule 202.02 does not apply to Carroll.

20